**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| DWIGHT D. DAVIES, | No. SA CV 16-132-PLA |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on January 27, 2016, seeking review of the Commissioner's denial of his application for Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before the undersigned Magistrate Judge on February 26, 2016, and March 15, 2016. Pursuant to the Court's Order, the parties filed a Joint Stipulation (alternatively "JS") on November 1, 2016, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on January 14, 1953. [Administrative Record ("AR") at 28, 145.] He has past relevant work experience as an office machine servicer.[1] [AR at 28, 53-60.]

On May 1, 2012, plaintiff filed an application for a period of disability and DIB, alleging that he has been unable to work since January 1, 2010. [AR at 20, 145-46.] After his application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 20, 104-05.] A hearing was held on April 2, 2014, at which time plaintiff appeared represented by an attorney, and testified on his own behalf. [AR at 35-60.] A vocational expert ("VE") also testified. [AR at 53-60.] On April 23, 2014, the ALJ issued a decision concluding that plaintiff was not under a disability from January 1, 2010, the alleged onset date, through April 23, 2014, the date of the decision. [AR at 20-30.] Plaintiff requested review of the ALJ's decision by the Appeals Council. When the Appeals Council denied plaintiff's request for review on September 2, 2015 [AR at 11-15], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

---

[1] Although the ALJ stated plaintiff's past relevant work was as an office machine *supervisor*, the VE testified that it was as an office machine *servicer*. [AR at 28, 54; see also AR at 38 (plaintiff stated at the hearing that his past relevant work involved *fixing* printers or copier machines).] Because the ALJ determined plaintiff was unable to perform his past relevant work, this discrepancy does not impact the decision herein.

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

### A.  THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996. In the first step, the Commissioner must

determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. Id. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since January 1, 2010, the alleged onset date.[2] [AR at 22.] At step two, the ALJ concluded that plaintiff has the severe impairments of diabetes mellitus with neuropathy; arthritis; cataracts; paresthesia and pain in both feet; degenerative disc disease; rotator cuff tendonitis of the right arm; dizziness;

---

[2]   The ALJ concluded that plaintiff meets the insured status requirements of the Social Security Act through June 30, 2017. [AR at 22.]

and past strokes. [Id.] She also found that plaintiff's medically determinable impairments of hypertension, anxiety, and depression, considered singly and in combination, are nonsevere. [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [AR at 25.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform less than the full range of medium work as defined in 20 C.F.R. § 404.1567(c),[4] as follows:

> [C]an lift and/or carry twenty-five pounds frequently, fifty pounds occasionally; he can sit, stand and/or walk for six hours out of an eight-hour workday; he is not to climb ladders, ropes, or scaffolds; he can occasionally reach overhead with the right upper extremity; he is not to do any job which requires depth perception for safety purposes; he is not to work at jobs which require left peripheral vision; and he is to avoid all exposure to unprotected heights and moving and dangerous machinery.

[Id.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is unable to perform his past relevant work as an office machine servicer. [AR at 28, 30, 74-76.] At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as a "laundry worker I" (Dictionary of Occupational Titles ("DOT") No. 361.664-014), and "dining room attendant" (DOT No. 311.677-018). [AR at 29, 58-59.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of January 1, 2010, through April 23, 2014, the date of the decision. [AR at 29.]

**V.**

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when she failed to elicit a persuasive explanation from

---

[3] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

the VE for a clear deviation from the DOT. [JS at 4.] As set forth below, the Court agrees with plaintiff and remands for further proceedings.

**A. STEP FIVE**

In determining whether appropriate jobs exist for a claimant, or whether the claimant can perform his past relevant work, the VE generally will refer to the DOT. See Light v. Social Sec. Admin., 119 F.3d 789, 793 (9th Cir. 1997). The DOT is usually "the best source for how a job is generally performed." Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001). SSR 00-4p explicitly requires that the ALJ determine whether the VE's testimony deviates from the DOT, and whether there is a reasonable explanation for any deviation. See SSR 00-4p (stating that an ALJ must inquire whether a VE's testimony regarding "the requirements of a job or occupation" conflicts with the DOT).[5] The procedural requirements of SSR 00-4p ensure that the record is clear as to why an ALJ relied on a VE's testimony, particularly in cases where the expert's testimony conflicts with the DOT. Massachi, 486 F.3d at 1153. In making disability determinations, the ALJ may rely on VE testimony that contradicts the DOT, but only insofar as the record contains persuasive

---

[5] SSR 00-4p provides in relevant part:

> When a VE . . . provides evidence about the requirements of a job or occupation, the [ALJ] has an affirmative responsibility to ask about any possible conflict between that VE . . . evidence and information provided in the DOT. . . .
> . . . .
> If the VE's . . . evidence appears to conflict with the DOT, the [ALJ] will obtain a reasonable explanation for the apparent conflict.
> . . . .
> When vocational evidence provided by a VE . . . is not consistent with information in the DOT, the [ALJ] must resolve this conflict before relying on the VE . . . evidence to support a determination or decision that the individual is or is not disabled. The [ALJ] will explain in the determination or decision how he or she resolved the conflict. The [ALJ] must explain the resolution of the conflict irrespective of how the conflict was identified.

SSR 00-4p (emphasis added). SSR 00-4p further provides that "[w]hen there is an apparent unresolved conflict between VE . . . evidence and the DOT, the [ALJ] must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled." Id. (emphasis added).

evidence to support the deviation. Light, 119 F.3d at 793; Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995); Massachi, 486 F.3d at 1153. Although evidence provided by a VE "generally should be consistent" with the DOT, "[n]either the DOT nor the VE . . . evidence automatically 'trumps' when there is a conflict." SSR 00-4p. Thus, an ALJ must first determine whether a conflict exists, and if it does, she must then determine whether the VE's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the DOT. Id.

Only after determining whether the testimony of the VE has deviated from the DOT, and whether any deviation is reasonable, can an ALJ properly rely on the VE's testimony as substantial evidence to support a disability determination. Massachi, 486 F.3d at 1152-54. Evidence sufficient to support a deviation from the DOT may be either specific findings of fact regarding a claimant's ability to perform particular jobs, or inferences drawn from the context of the expert's testimony. See Light, 119 F.3d at 1435 n.7 (ALJ provided sufficient support for deviation by noting that the VE described characteristics and requirements of jobs in the local area consistent with claimant's RFC); Terry v. Sullivan, 903 F.2d 1273, 1279 (9th Cir. 1990) (ALJ may infer support for deviation where VE's understanding of applicable legal standards is clear from context).

**B.   THE PARTIES' CONTENTIONS**

Plaintiff's RFC limits him to occasional overhead reaching with his right upper extremity, and the ALJ's hypotheticals to the VE included this limitation. [AR at 25, 57-58 (the "[hypothetical individual] can do occasional overhead reaching with the right, upper extremity").] The DOT describes the physical demands for the occupations of "laundry worker I" (DOT No. 361.684-014), and "dining room attendant" (DOT No. 311.677-018), however, as requiring frequent and constant reaching, respectively.

Reaching is described by the Social Security Administration as "extending the hands and arms *in any direction.*" Soc. Sec. Ruling ("SSR")[6] 85-15 (emphasis added); see also Mkhitaryan

---

[6] "The Commissioner issues [SSRs] to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the [Social Security Administration].
(continued...)

7

1  v. Astrue, 2010 WL 1752162, at *3 (C.D. Cal. Apr. 27, 2010) (citing the Selected Characteristics
2  of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO"), app. C) ("the
3  plain meaning of 'reaching' under the SCO encompasses above-the-shoulder reaching"). "'Any
4  direction' would appear to include overhead." White v. Colvin, 2016 WL 4402798, at *4 (C.D. Cal.
5  Aug. 17, 2016). Consequently, "many courts have discerned a conflict between the requirement
6  of frequent reaching and a preclusion or restriction on reaching overhead or above the shoulder."
7  Id. (citing cases finding a conflict). As evidenced in part by the competing case law presented by
8  the parties [compare JS at 6-7 & n.2, 16-17 with JS at 14-15], case law on this issue is not
9  uniform. Brewer v. Colvin, 2016 WL 4491498, at *3 & n.4 (C.D. Cal. Aug. 24, 2016); White, 2016
10 WL 4402798, at *4 & n.5.

11      Because the DOT job descriptions for the two occupations identified by the VE do not
12 distinguish between the kind of reaching involved (front, lateral, or overhead), plaintiff argues that
13 the frequent or constant reaching requirements for these positions exceed his functional limitations
14 and, because the ALJ failed to identify and obtain a reasonable explanation from the VE regarding
15 this deviation from the DOT, reversal is warranted. [JS at 5-10, 15-17.] Plaintiff notes that "if [he]
16 is precluded from medium work due to the limitation in reaching with the right upper extremity, he
17 is disabled per . . . Grid Rule[] 202.06."[7] [AR at 10-11; see also 20 C.F.R. pt. 404, subpt. P, app.
18 2, § 202.06 (a person, such as plaintiff, of advanced age whose maximum sustained work
19 capability is limited to light, and who meets the other educational and vocational requirements
20 under § 202.06, is considered disabled).]

21      Defendant responds that this argument is waived because counsel did not raise it at the
22 hearing. [JS at 11 (citing AR at 53-59).] Additionally, before the VE testified, the ALJ directed him

---

[6](...continued)
SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

[7]  The Court expresses no opinion on the merits of plaintiff's claim that he is disabled under the Grids.

to testify consistently with the DOT and to let her know if his testimony deviated from the DOT. [JS at 13 (citing AR at 57).] The hypotheticals to the VE included plaintiff's overhead reaching limitation, and the VE testified that such an individual could work in the two representative occupations of laundry worker and dining room attendant and did not indicate that this testimony deviated from the DOT with respect to plaintiff's overhead reaching limitation or in any other way. [JS at 12-13.] Therefore, it was "appropriate for the ALJ to rely on a [VE] to provide additional vocational evidence with respect to overhead reaching because the DOT itself is silent on that issue." [JS at 14.] Defendant also argues that there is no conflict between the VE's testimony and the DOT, because plaintiff has no limitation with respect to overhead reaching with his left arm,[8] and is even able to engage in overhead reaching occasionally with his right arm, and the DOT does not state that these occupations "require frequent or constant reaching *with both arms*." [JS at 12-14 (citations omitted).] Thus, because plaintiff is capable of even constant overhead reaching with his left arm, "[p]laintiff has failed to show any conflict with the DOT." [JS at 15.] Defendant submits that there is nothing in the descriptions of the duties for these two positions that suggests that they would require overhead reaching that exceeds plaintiff's RFC. [JS at 13-14.]

**C.   ANALYSIS**

Preliminarily, defendant's argument that plaintiff waived this issue because he failed to raise it at the hearing [JS at 12 (citation omitted) (noting that "'Counsel are not supposed to be potted plants at administrative hearings,' and 'have an obligation to take an active role and to raise issues that may impact the ALJ's decision while the hearing is proceeding . . . .'")], is unpersuasive. "[T]he fact that Plaintiff's representative did not challenge the VE's testimony as inconsistent with the DOT at the time of the hearing is not conclusive as to whether an apparent conflict exists, nor does it constitute a waiver of the argument." Gonzales v. Astrue, 2012 WL 2064947, at *4 (E.D. Cal. June 7, 2012) (citing Sims v. Apfel, 530 U.S. 103, 111-12, 120 S. Ct.

---

[8]   No evidence was presented as to plaintiff's dominant hand/arm.

2080, 147 L. Ed. 2d 80) (2000)). Indeed, "[c]laimants 'need not preserve issues in proceedings before the Commissioner or her delegates.'" Norris v. Colvin, 2013 WL 5379507, at *3 (C.D. Cal. Sept. 25, 2013) (quoting Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005)); see also Sims, 530 U.S. at 111-12 ("Claimants who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues.").

Moreover, it is the ALJ who bears the burden of making the necessary inquiry of the VE. SSR 00-4p; Massachi, 486 F.3d at 1152-53; see Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) (ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered, even when the claimant is represented by counsel). Here, *before* the VE testified, the ALJ directed him to testify in accordance with the DOT and to explain any testimony that was not consistent. However, *after* the VE testified, the ALJ did not make any further inquiry into whether the VE's testimony had been consistent with the DOT. Neither did the VE identify any potential conflict or deviation from the DOT as to the reaching limitation, or provide any explanation to resolve the potential or apparent conflict. An ALJ "cannot simply rely on the VE's testimony that no such conflicts exist." See Marquez v. Astrue, 2012 WL 3011779, at *2-3 (D. Ariz. July 23, 2012). The issue was not waived.

Next, defendant contends that a "limitation in overhead reaching *does not equal* a limitation in reaching." [JS at 14 (emphasis added) (citing Suarez v. Colvin, 2015 WL 351424, at *6 (E.D. Cal. 2015), Gutierrez v. Colvin, __ F. App'x __, 2016 WL 4056067, at *1 (9th Cir. July 29, 2016) (unpublished)).] Defendant also notes that plaintiff "fails to acknowledge that the DOT does not state that these jobs require reaching *with both hands*," and that "[n]umerous courts have acknowledged that the DOT does not require frequent reaching with both hands." [JS at 15 (citations omitted).[9]] Indeed, in the unpublished Gutierrez opinion, the Ninth Circuit noted that there is no "'apparent' conflict" between the VE's conclusion that an individual with an inability to

---

[9] As noted herein, case law on this issue is *not* uniform and for every case cited by defendant, a contrary case may be cited by plaintiff. White, 2016 WL 4402798, at *4 & n.5.

1 reach above shoulder level with her right hand/arm could perform cashier work and the DOT's
2 generic job description requiring "frequent" reaching (which would *require* the ALJ to inquire about
3 the conflict and obtain a reasonable explanation), because "the DOT *fails to specify* that the ability
4 to reach *overhead with both [arms]* is required" to perform that work. Gutierrez, 2016 WL
5 4056067, at *1 (first emphasis added).

      In fact, no occupation listed in the DOT specifies whether the "generic" reaching requirement is with one arm or both arms or in one or more directions; the "generic" reaching requirements in the DOT merely indicate whether that activity or condition is not present, occasional, frequent, or constant. It would seem that by the reasoning of Gutierrez, there could never be an apparent conflict and, therefore, no explanation would ever be required, for a reaching limitation in one limb or in one direction that differed from the otherwise "generic" job description. This could lead to anomalous results. For instance, even if a VE suggested the occupation of "dancer" (DOT No. 151.047-010) -- which would logically seem to require reaching in all directions with both arms -- for an individual, such as plaintiff, who has an overhead reaching limitation in one arm, there is no "apparent conflict" (and, therefore, no need to obtain an explanation for the deviation from the VE) simply because the DOT's "generic" reaching description does not specify that frequent reaching is required with both arms in all directions to perform that occupation.

      However, as also acknowledged by the Ninth Circuit in Gutierrez, "[t]he DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings," and there is "ample room for '[a] VE . . . to provide more specific information about jobs or occupations than the DOT.'" Gutierrez, 2016 WL 4056067, at *1. The court noted that even assuming there was an apparent conflict, the VE in that case had provided a reasonable explanation for the deviation because he made clear that he had considered the reaching limitation and reduced the number of positions available to take it into account. Gutierrez, 2016 WL 4056067, at *1 (citing SSR 00-4p). In plaintiff's case, there was no such "reasonable explanation" for the deviation.

      As discussed above, the two representative occupations identified by the VE here are defined by the DOT as requiring "frequent" or "constant" reaching. This Court finds that in this

11

case there is an apparent conflict between the VE's testimony and the DOT vocational reaching requirements for the suggested positions. Mkhitaryan, 2010 WL 1752162, at *3. At a minimum, therefore, an explanation of that deviation is necessary. Carpenter v. Colvin, 2014 WL 4795037, at *8 (E.D. Cal. Sept. 25, 2014) (testimony that a claimant limited to occasional overhead reaching can nonetheless perform frequent reaching is the type of deviation that should be resolved by explanation from the VE) (citing Winder v. Astrue, 2013 WL 489611, at *2 (C.D. Cal. Feb. 6, 2013)); Richardson v. Astrue, 2012 WL 1425130, at *4 (C.D. Cal. Apr. 25, 2012) (reaching in "any" direction plainly encompasses overhead reaching; therefore, VE's testimony deviated from DOT and the ALJ was required to obtain "persuasive evidence" to explain the deviation); see Kemp ex rel. Kemp v. Colvin, 743 F.3d 630, 633 (8th Cir. 2014) (ALJ gave specific directions to the VE before he testified, but there is no evidence the VE or the ALJ even recognized the possible conflict between an individual who could reach overhead only occasionally, and the DOT requirement of constant reaching); see also Prochaska v. Barnhart, 454 F.3d 731, 736 (7th Cir. 2006) (noting that it is "not clear . . . whether the DOT's requirements include reaching above shoulder level, and this is exactly the sort of inconsistency the ALJ should have resolved with the expert's help").

Indeed, Ninth Circuit precedent requires "that the record clearly show how the ALJ resolved apparent conflicts." Norris, 2013 WL 5379507, at *3 (citing Massachi, 486 F.3d at 1153). Thus, absent a reasonable explanation for the conflict -- and defendant has pointed to no persuasive evidence in the record to explain the deviation in this case -- an ALJ cannot properly rely on the VE's testimony as substantial evidence to support a disability determination. Massachi, 486 F.3d at 1152-54; SSR 00-4p. Moreover, Massachi "does not suggest that the ALJ need look no further than the VE's testimony in order to meet his obligation under SSR 00-4p to search for conflicts between the VE and the DOT." Marquez, 2012 WL 3011779, at *2-3. Instead, Massachi "construes SSR 00-4p as 'explicitly requiring that the ALJ determine whether the expert's testimony deviates from the [DOT] and whether there is a reasonable explanation for any deviation.'" Marquez, 2012 WL 3011779, at * 2. In short, while counsel is not supposed to be a "potted plant" at the administrative hearing, neither is the ALJ.

Here, although he directed the VE to testify consistently with the DOT, the ALJ relied on VE testimony that potentially conflicted with the DOT's reaching requirements, and neither the VE nor the ALJ recognized the possible conflict and provided an explanation for the deviation. See Light, 119 F.3d at 793; Johnson, 60 F.3d at 1435 ("an ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation"); Kemp, 743 F.3d at 633. Instead, the record contains only the VE's conclusion that plaintiff can perform work requiring "frequent" or "constant" reaching despite an RFC limiting him to occasional overhead reaching with his right arm, and the ALJ's unsupported determination that the VE's testimony did not conflict with the DOT despite the DOT's reaching requirements for these jobs. "Where an ALJ fails to obtain an explanation for and resolve an apparent conflict -- even where the VE did not identify the conflict -- the ALJ errs." Richardson, 2012 WL 1425130, at *5; White, 2016 WL 4402798, at *5.

Until the Ninth Circuit resolves the issue in binding precedent, the more prudent (and certainly not overly difficult) course is for the ALJ to seek, and a VE to provide, a reasonable explanation for the potential conflict that arises when a claimant has a reaching limitation that deviates from the DOT reaching description for the occupations suggested by the VE, such as in this case.

Remand is required to obtain VE testimony to resolve the inconsistency between plaintiff's limitation to occasional overhead reaching with his right arm, and the DOT job descriptions for the two representative occupations, which require frequent or constant reaching. Massachi, 486 F.3d at 1155.

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

The Court has discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Lingenfelter v. Astrue, 504 F.3d 1028,

1041 (9th Cir. 2007); Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Benecke, 379 F.3d at 593-96.

In this case, there is an outstanding issue that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, the ALJ shall obtain VE testimony to resolve the inconsistency between plaintiff's limitation to overhead reaching with his right arm,[10] and the DOT job descriptions for the two representative occupations. Next, based on the VE testimony, the ALJ shall determine, at step five, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the national economy that plaintiff can still perform.[11]

/
/
/
/
/
/
/
/
/
/

---

[10] Nothing herein is intended to disrupt the ALJ's overall RFC determination.

[11] Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff is unable to return to his past relevant work.

14

## VII.

## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: November 8, 2016

　　　　　　　　　　　　　　　　　　　／s／ Paul L. Abrams
　　　　　　　　　　　　　　　　　　　PAUL L. ABRAMS
　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE